IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 10, 2007 Session

## CITY OF KNOXVILLE v. KNOX COUNTY, TENNESSEE

**Appeal from the Chancery Court for Davidson County**
**No. 04-3039-I    Claudia Bonnyman, Chancellor**

---

**No. M2006-00916-COA-R3-CV - Filed February 20, 2008**

---

The issue on appeal in this annexation dispute between the annexing city and the county is which tax allocation statute controls the allocation of Local Option Revenue derived from the annexed territory: the one in effect when the city passed the annexation ordinance on final reading, or the one in effect when the annexation ordinance became operative following a protracted *quo warranto* action. The city, which annexed valuable retail and commercial property, contends the tax scheme in effect in 1995 when the ordinance passed final reading applies. The county contends Tenn. Code Ann. § 6-51-115(b)(2) (1998), which was enacted after the ordinance was passed by the city, applies because it was in effect when the ordinance became operative. The Chancellor ruled in favor of the city, finding the statute in effect when the city passed the annexation ordinance applies. We reverse finding Tenn. Code Ann. § 6-51-115(b)(2) (1998), which was in effect when the ordinance became operative, controls the allocation of tax revenue from the annexed territory.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which J. STEVEN STAFFORD, SP. J., joined. PATRICIA J. COTTRELL, P.J., M.S., filed a concurring opinion.

John E. Owings and Robert C. McConkey, III, Knoxville, Tennessee, for the appellant, Knox County, Tennessee.

W. Morris Kizer and Debra C. Poplin, Knoxville, Tennessee, for the appellee, City of Knoxville.

### OPINION

On August 15, 1995, the City of Knoxville (the "City") passed an annexation ordinance on second and final reading to annex certain property in Knox County (the "County"). The Ordinance, No. O-412-95, annexed property adjoining the City identified as "an area generally being described as a tract of land north of Clinton Highway and approximately 1,800 feet east of the intersection of Callahan Drive and Clinton Highway . . . ." On September 12, 1995, a *quo warranto* action contesting the annexation was timely filed. The *quo warranto* action endured for the next eight years, until June 30, 2003, when the parties reached a settlement and an order of dismissal was entered by the Knox County Chancery Court.

While the *quo warranto* action was pending, the Tennessee General Assembly enacted Tenn. Code Ann. § 6-51-115(b)(2) (1998). The statute, which went into effect on May 19, 1998, made significant changes to the manner in which the county and the annexing city shared certain tax revenues from the newly annexed area. In pertinent part, the Act states that when a municipality annexes territory in which there is retail or wholesale activity at the time the annexation takes effect, the tax revenue from the annexed area shall be allocated between the city and county as follows:

> [F]or retail activity subject to the Local Option Revenue Act, *the county shall continue to receive annually an amount equal to the amount of revenue the county received pursuant to § 67-6-712(a)(2)(A) in the twelve (12) months immediately preceding the effective date of the annexation for business establishments in the annexed area that produced Local Option Revenue Act during that entire twelve (12) months*. . . . For business establishments which did not produce revenue before the annexation date and produced revenue within three (3) months after the annexation date . . . the county shall continue to receive annually an amount determined . . . . A municipality shall only pay the county the amount required by this subdivision (b)(2), for a period of fifteen (15) years.

Tenn. Code Ann. § 6-51-115(b)(2) (1998) (emphasis added).[1]

When the City was informed that the taxes for the annexed area were to be allocated pursuant to the 1998 statute, the City filed a petition for a declaratory order as to the applicability of Tenn. Code Ann. § 6-51-115(b)(2) to the Ordinance. The City argued that the statute did not apply to the Ordinance because the Ordinance was passed before the statute went into effect, regardless of the fact that the annexation was not operative until 2003. The Department of Revenue denied the City's request for a declaratory order. Thereafter, the City filed this action, a petition for declaratory judgment against the Tennessee Department of Revenue in the Chancery Court. Soon after the commencement of this action, Knox County (the "County") filed a motion to intervene as a party defendant. The parties submitted an agreed order allowing the County's intervention.

There being no factual disputes, the City and County both filed motions for summary judgment. The City contended the statute did not apply to the annexed area because the Ordinance was approved by the City prior to the statute going into effect. The County argued that the statute applied to the annexed area because the statute was in effect when the Ordinance became effective in 2003, when the *quo warranto* litigation challenging the City's annexation ordinance was dismissed. After a hearing on the motions for summary judgment, the Chancellor granted summary

---

[1] In 1995, when the City passed the Ordinance, Tenn. Code Ann. § 6-51-115 provided that the county "shall continue to receive the revenue from all state and local taxes distributed on the basis of situs of collection, generated within the annexed area, until July 1 following the annexation, . . ." Based upon the 1995 statute, the City would have started receiving the applicable taxes as of July 1 following the annexation ordinance going into effect. Under the 1998 statute, the county would continue to receive the applicable taxes for the next fifteen years. The statute has been the subject of several substantive amendments that affect the allocation of the Local Option Revenue between the county and the annexing city. Those amendments include Chapter 959 of the Public Acts of 2004, Chapter 311 of the Public Acts of 2005, and Chapter 602 of the Public Acts of 2007.

judgment to the City, finding the law applicable to an annexation is the law in effect when the ordinance was *enacted* by the City, not when the annexation is *effective*. This appeal followed.[2]

**STANDARD OF REVIEW**

No genuine material factual disputes are presented. The issue presented hinges on the proper interpretation of Tennessee statutes and their application to the facts of this case. Issues involving the construction of statutes and their application to facts involve questions of law. *Memphis Publ'g Co. v. Cherokee Children & Family Servs., Inc.*, 87 S.W.3d 67, 74 (Tenn. 2002); *Waller v. Bryan*, 16 S.W.3d 770, 773 (Tenn. Ct. App. 1999). Therefore, the trial court's resolution of these issues is not entitled to Tenn. R. App. P. 13(d)'s presumption of correctness on appeal. We will review the issues *de novo* and reach our own independent conclusions regarding them. *King v. Pope*, 91 S.W.3d 314, 318 (Tenn. 2002).

**ANALYSIS**

The sole issue, as presented by the County in its brief, reads as follows:

> Whether section 6-51-115(b)(2), enacted by Chapter 1101 of the Public Acts of 1998 and effective May 19, 1998, applies to an annexation that was passed by ordinance, the final reading and approval of which occurred prior to May 19, 1998, but that was not operative until after May 19, 1998, because of litigation challenging the annexation.

The Chancery Court determined that section 6-51-115(b)(2), enacted by Chapter 1101 of the Public Acts of 1998, did not apply; to the contrary, the Chancellor determined the previous statute, the one in effect when the ordinance was passed and approved by the City, applies. We respectfully disagree. As the County contends, we have determined that Tennessee Code Annotated § 6-51-115(b)(2) (1998), enacted by Chapter 1101 of the Public Acts of 1998 and effective May 19, 1998, applies.

Tennessee Code Annotated § 6-51-102 (a)(1) authorizes a municipality, such as the City, to annex an adjoining territory "when it appears that the prosperity of such municipality and territory will be materially retarded and the safety and welfare of the inhabitants and property endangered." The statute further provides that "after notice and public hearing," the municipality may, by ordinance, "extend its corporate limits by annexation of such territory adjoining its existing boundaries as may be deemed necessary for the welfare of the residents and property owners of the affected territory as well as the municipality as a whole." Tenn. Code Ann. § 6-51-102(a)(1). The annexation, however, does not go into effect immediately upon passage of the ordinance by the municipality. To the contrary, in 1995, when the City passed the Ordinance, the annexation statute specifically provided that "the ordinance shall not become operative until thirty (30) days after final passage thereof." *Id.* The reason for the delay was to afford those who opposed the annexation

---

[2]The County timely filed its notice of appeal. The State did not. Thus, the State is not a party to this appeal.

sufficient time to file a *quo warranto* action to contest the annexation. *See* Tenn. Code Ann. § 6-51-103.

When a *quo warranto* action is timely filed to challenge an annexation, the effective date of the challenged annexation ordinance is "held in abeyance" pending the litigation. *Highwoods Properties, Inc. v. City of Memphis*, No. W2006-00732-COA-R3-CV, 2006 WL 3628102 at *7 (Tenn. Ct. App. Dec. 14, 2006). Moreover, an annexation is not "effective" or "operative" until the ordinance is upheld as valid by the presiding court. *Piper v. City of Memphis*, 861 S.W.2d 832, 833-34 (Tenn. Ct. App. 1992) (citing *Mayor & Aldermen of Chattanooga v. Raulston*, 97 S.W. 456 (Tenn. 1906)). As explained in *Piper*, "the only way a municipal tax may be assessed against a particular piece of annexed property is when the effective date of annexation is prior to the tax day of the year in question." 861 S.W.2d 833-34. Accordingly, for purposes of taxation of an annexed area, the date the annexation becomes "effective" is the controlling date, not the date on which the ordinance was passed and approved by the municipality.

Although the Ordinance was passed and approved by the City in August of 1995, a *quo warranto* action was timely filed challenging the Ordinance; thus, as long as that *quo warranto* action was pending, the annexation did not become effective or operative. It was not until 2003, five years after the enactment of Tenn. Code Ann. § 6-51-115(b)(2) (1998), that the territory at issue was effectively annexed and a part of the City. Accordingly, if the holding in *Piper* controls the issue at bar, the County's position prevails because Tenn. Code Ann. § 6-51-115(b)(2) (1998) was the operative statute. The City, however, contends that this court's holding in *Jefferson County v. City of Morristown*, No. 03A01-9810-CH-00331, 1999 WL 817519 at *8 (Tenn. Ct. App. Oct. 13, 1999) compels a different conclusion, specifically that "the law applicable to the final act of a legislative body is the law in effect when that body takes its final action." *Id.*

We have determined the City's reliance on the holding in *Jefferson County v. Morristown* is misplaced. This is because the issue in *Jefferson County* was *the validity of the annexations*, whether the City of Morristown correctly followed the applicable law when the annexation ordinance was passed, as distinguished from which taxation law applied to the annexed territory once an annexation ordinance becomes operative.[3] *Id.* Having distinguished *Jefferson County* from the fact and issues presented here, we hold that the ruling in *Piper* is applicable to the case at bar.

The determinative date is the date on which the annexation ordinance becomes "effective" or "operative." *See Piper*, 861 S.W.2d at 833-34. When the Ordinance became effective or operative

---

[3]Jefferson County challenged the validity of the multifaceted efforts of the City of Morristown – the county seat of Hamblen County – to include as a part of an industrial park to be developed by Morristown 250 acres of property in neighboring Jefferson County. The City of Morristown, through its Industrial Development Board, purchased the Jefferson County acreage from the various landowners and thereafter annexed the property into its boundaries. Jefferson County opposed the proposed development of a public works project because the City of Morristown had not obtained its consent, which the county believed was required by Tenn. Code Ann. § 9-21-107(1) (1992). In an effort to enjoin Morristown and its Industrial Development Board from purchasing any more property in Jefferson County for the proposed development without obtaining the consent of Jefferson County, the Jefferson County Commission filed suit. As the suit progressed, the county contended the City of Morristown had not applied or followed the correct annexation statute when the annexation ordinance was passed by the City.

in 2003, Tenn. Code Ann. § 6-51-115(b)(2) (1998) was in effect. Thus, Tenn. Code Ann. § 6-51-115(b)(2) (1998), not the statute in effect when the Ordinance was passed in 1995, controls the allocation of taxes from the annexed territory between the City of Knoxville and Knox County.

## In Conclusion

For the foregoing reasons, we reverse the decision of the Chancery Court and remand with instruction for the Chancellor to grant the County's motion for summary judgment and to enter judgment to that effect. This case is remanded for further proceedings consistent with this opinion and costs of this appeal are assessed against the City.

_____
FRANK G. CLEMENT, JR., JUDGE